Good morning, Your Honors, and may it please the Court. This case is about affirming the principles which promote the relation between parents and their un-emancipated child. I believe that this Court should consider two points when considering this petition. First, it should complete what Cuevas-Gaspar left unanswered, and I respectfully direct the Court's attention to page 10 of the 1022 of that opinion, in which the Court said that A-1 and A-2 of the cancellation requirements were unanswered. In the Cuevas-Gaspar Court, the Court decided the A-2 provision, which relates to the seven years. We're asking the Court today to simply complete what Cuevas-Gaspar left unanswered, and that is to allow imputation of the lawful permanent residence time of an un-emancipated child's parents to impute to that child for purposes of cancellation. We believe that there is room in this petition to allow this Court to take such action. First of all, the statute in question relating to the five years, we agree that, with the Court, that it is silent and ambiguous. And so normally, in accordance with the Chevron case and its progeny, that deference ought to be made. But we think that the statute, as interpreted by the overseers of the acting question, and that is the agency, we believe that their interpretation is unreasonable. Why is it unreasonable? Well, Your Honor, respectfully, it's not just merely disagreement with the particular outcome, but we believe, in this case, to use an offshoot of a commonly used expression, that quantity matters here. And this Circuit considers over 5,000 petitions in any given year. Forty-one percent of its caseload involves immigration. So we think that what this Circuit, what this Court says with regard to immigration, it has assumed the overseer status that the agency has been lacking. Why is the agency lacking? Well, because when a lot of times when the agency decides a case, they go ahead and affirm without opinion, thereby shifting their congressional role to the Circuit courts. Now, I would point out that's not true in Escobar, and that is not true here. But for reasons that, again, relate to well-settled principles of uniting families, and allowing children to impute, or allowing the time of the lawful permanent resident parent to impute their time to their children, is not an extraordinary idea. We see this in cases regarding the Cubans who adjust their status pursuant to Cuban Refugee Act, when they, when a Cuban comes to the United States as a refugee, then subsequently adjust status. That relating back of their adjustment of status goes to the time that they were paroled into the United States. So there's one example there whereby there's a relating back, an imputation of time, as it were, to allow the alien to approve more time than what would otherwise be apparent. Secondly, in cases involving naturalization and derivative citizenship, it's not uncommon. In fact, it's enshrined in law for a parent to transmit citizenship to their emancipated child. I think that this Court may rightfully have some trouble with the unanswered question regarding the A-1 requirement, and that is the 5-year requirement. Again, we just simply hold that, or we view the statute as permitting the un-emancipated child to accrue the time from their parents for permanent residence. Now, this is the statute that says that. Judge Farris, nothing in the statute does say that. But I think it's important to keep in mind, though, that the petitioner in this case, Mr. Mercado, did not, as a minor, get up one day and say, I think I'll go to the local immigration office and become a permanent resident. He became a permanent resident because of the actions of his parents. Now, the dissenting judge in Cuevas-Gaspar, Judge Fernandez, raised the issue distinguishing between domicile and residence. We think that that distinction has no difference in this case. First, because an un-emancipated child follows his or her parents. And so if his or her parents then takes those actions which result in that child becoming a permanent resident, it's no different than a child simply living with their parents. So you don't have to be familiar with the case. It was just the argument. But the reason there's a problem that we're going to have to resolve is that the child lived part of the time with his father and part of the time with his mother. They lived in two different... One lived in a former home, one lived in the United States. And that's why he's delayed, because he came to live with his mother at a later date. So when you talk about that... I believe the facts in this case is that the mother, who was then a legal permanent resident, and the father married in 1992. In 1998, the then lawful permanent resident father adopted the petition in this case while still a minor. Then in April 9th of 2002, the petitioner in this case, Mr. Mercado, was accorded permanent residence. It was subsequent to his being accorded permanent resident status that he did not have sufficient time as a lawful permanent resident to avail himself to cancellation and removal. If we follow the statute, would you win or lose, if we follow the express language of the statute? Your Honor, in order to fully define the intent of Congress, it requires the customary tools of statutory construction and all the attendant tools that go into interpreting a statute. We believe, Your Honor, that if we go by the statute, Mr. Mercado wins. And I reserve the balance of my time. One question. Was he an emancipated minor during the entire time required by the statute? Your Honor, he was placed into removal proceedings in 2006. And so by that time, he was already, well, he was under 21. He was over 18. So I'm not sure I understand. And we know the immigration law is defined minor in different places in different ways. So I guess that's not an easy question to answer. It's not, Your Honor. And I reserve the balance of my time. All right. Thank you. Good morning, Your Honors. May it please the Court, Charles Cantor on behalf of the Attorney General. I'll spare the panel my own ruminations on the validity of Escobar and defer to my colleague. But I would like to point out maybe just a bit about what this Court's role in deciding these kinds of cases. Because I think Judge Schwartzer got on it earlier. The Board has decided that a parent's lawful permanent resident status should not be imputed to a child for purposes of cancellation of removal. The Petitioner in this case and the other cases say that's wrong. If that's the case, if it's the case that that's incorrect, then they must be, it follows that they must be arguing that it is required, the statute requires that a parent's admission as a lawful permanent resident be imputed. But that's not really where we are in these cases. The statute makes no mention of imputation of a parent's status. This Court held in Cuevas-Gaspar that the statute is ambiguous because it's silent on that issue. I think that part of Cuevas-Gaspar remains regardless of what the Board says because that's a first, sort of a threshold question of statutory interpretation, is the statute ambiguous or not. If it's ambiguous or silent, then the question is, is the interpretation reasonable? Now, as Your Honors or several parties have pointed out, yes, there are policies of family unity, and there are some instances in particular cases where I think it's not quite precise, but effectively a child sort of receives the benefits that the parent receives. But principles and general principles and general policies play a different role at different stages in deciding these cases. The first step is Congress itself has, you know, makes, considers policies and such, and makes different decisions and draws different lines deciding what benefits to whom and under what circumstances. Here they could have specified that, you know, in addition to the, what I think the stronger language, but I don't think it's, we can, the stronger argument that is a clear language, though I don't think we can make that, is simply that Congress chose to say that the Attorney General may cancel the removal of an alien if the alien has been an alien and lawfully admitted for permanent resident status for not less than five years. They could have said, you know, provided a proviso that any unanticipated minor would be, would qualify under this, but they chose not to. This Court, sort of working on a, not a clean slate, but on a, you know, interpreting what it saw as an ambiguous statute, decided we think under our case law that imputation should be granted. Now, that's a perfectly, I think that's a reasonable interpretation, but under Brand X, when a court makes a decision interpreting an ambiguous statute, the agency who's charged with administering that statute, if it later on decides, disagrees with that interpretation, then it can supplant that interpretation with its own reasonable interpretation. So the question really is, is it permissible? Is it a permissible reading of the statute that the Board reached? And so, yes, principles and general policies play a role, but Congress has waived those and the Board has waived those, and so I think when, under Chevron, once the Court is looking at an agency decision, it's no longer, those questions, while relevant, are entitled to less weight. Ginsburg. Are we, and maybe this, I should save this for Escobar, but I don't see that Brand X necessarily applies here, because here, we, before the Board issued Escobar, we ruled that that position is unreasonable. So we've, we have precedent before Escobar that the position that Escobar landed upon is unreasonable. And are we bound to follow our own precedent in that case? Well, I don't. I mean, to me, this is more of a, do, are we, are we bound to follow our own precedent? Right or wrong, do we, can we sit here and look at it anew? I'm not sure we have the power to do that. Well, it's an interesting point. I think, I think that, first, yes, of course, you're bound by another panel's precedent. Except that, under this Court's case law, unpublished Board decisions are entitled to less deference than published Board decisions. And in Cuevas-Gaspar, that was an unpublished Board decision, so this Court would have been applying simply skid more deference versus Chevron less. I'm excited, though. So just because the BIA decides later to publish something that contradicts what is the role in our circuit, isn't it, I mean, aren't we bound to follow our own role, not the BIA's later decision to go to a different place? I, I don't think, I don't think that's quite, quite right under, I think if, in that circumstance, as Your Honor's presented it, Brandex has a very, very limited role, which is simply only if some issue has almost, Brandex clearly contemplates a situation which the Court has decided an issue, interpreting the, the, an ambiguous statute, and then an agency with a, reaching a, a different conclusion. So if Brandex would have no weight so long as any time a court were, were, were, were interpreting an ambiguous statute for the first time without an agency decision or usually at a petition for review, I mean, I think there always is some sort of agency decision. If the Court simply says, well, the agency's position here is unreasonable, then Brandex simply doesn't, doesn't really, doesn't mean much. It doesn't, it doesn't have much weight. I think that, you know, that there might be some language in Cuevas-Gaspar saying we think that the Board was unreasonable here. Well, again, I think that it's, that it's important to, to remember that the kind of deference that was being applied in that case is simply, is Skidmore deference, which is looking into the reasons given by the Board, whereas if a, with a published decision, it's Chevron deference, so. I don't think that, yes, but I don't think when this Court publishes is, is relevant because, again, that's, that's the, I mean, that's what Brandex stands for, is that presidential Court decisions, if they're interpreting an ambiguous statute, are trumped by subsequent agency decisions so long as the agency decision is reasonable. So that if the Court had. So long as it's reasonable, but we previously held that that position was not reasonable. That's where, that's where we are different from Brandex. I guess I just, I don't, I don't necessarily read Cuevas-Gaspar to be holding that the position is, is unreasonable. And if, if so, it's, it's, it would be saying that it's unreasonable, you know, given the reasons, for the reasons given by the agency, because that's the only deference that would, that's the inquiry that the Court would have been engaging in under Skidmore. So I don't think that, I don't think that Cuevas-Gaspar is bonding in, on this panel in the sense that there's a, there's a holding that this later interpretation is, is unreasonable. I think that it's, I think that in that sense, only because I think that that's, that's reading Brandex too narrowly and cabineting it off into a very limited set of cases, and because this Court applies different, different levels of deference to, to agency decisions, given the, sort of the nature of the, of the agency decision. Mr. Klotz is about to get you, Mr. Campa, and I wish you'd tell us what your bottom line is in this case. The bottom line, Your Honor, is that it is reasonable for the Board to read Section 240A of the, of the INA to, to apply only to aliens who in their own right have been admitted for lawful permanent residence status for five years and who have seven years of residence of any, of any kind. That's the bottom line. That's a reasonable interpretation for the reasons stated in Escobar and for the reasons that my colleague will probably get into more in the Escobar case, and so the petition for review should be denied. Thank you very much. Thank you, counsel. The government and the department fortunately provides enough paint to make several broad-brush strokes in this case. The, the department and the government together have aggressively asserted their own power to decide cases in derogatory circumstances, and they've done so in the interrogation of prior circuit precedent. But what they've done is read the statute literally without making the considerations that this Court has made. So tell us what's wrong with their doing what they're doing. Exactly, Your Honor. Judge Ferris, we believe that the overseers of this statute, the agency, has not employed the customary traditional tools of statutory enforcement. Well, the overseer of this statute in question would be the government, would be the U.R. well, the Board of Immigration Appeals. So the government has misconstrued crucial points with regard to bandits. What they do, and I don't want to use up your time, but what they do is not consider what we consider to be together. And they didn't. And we said that was unreasonable. Now, they've said we know what we consider doesn't take into consideration that families should be together, but we look at the specific language of the statute, and we say it applies to unemancipated children as well as it applies to anybody. Now, you say that's unreasonable, but what do we have to do? What's the question before us now? What do we do in your situation? The answer to the question is quite simple, Judge Ferris, and that is simply to complete what the Guaivas-Gaspar Court left somewhat unfinished, and that is to find that imputation is governed by the statute, employing traditional tools of statutory construction, and that this petitioner in this case, Mr. Mercado, can accrue the time from his parents for purposes of cancellation of removal. And I am out of time. All right. Thank you very much, counsel. Thank you. Mercado de Suarez v. McCasey is submitted, and we will now allow that Escobar v. McCasey. Thank you.
judges: Farris, Wardlaw, Schwarzer